*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* GARNETT/COUCH, Minors.

UNPUBLISHED
August 11, 2026
9:31 AM

No. 377638
Kent Circuit Court
Family Division
LC Nos. 24-050519-NA;
24-050520-NA;
24-050522-NA;
24-050524-NA;
24-050525-NA

Before: BOONSTRA, P.J., and YOUNG and KOROBKIN, JJ.

PER CURIAM.

Respondent appeals by right the order terminating her parental rights to five of her children,[1] ZG, NG, KC, CC, and SC, pursuant to MCL 712A.19b(3)(c)(*i*) (failure to rectify conditions of adjudication) and (g) (failure to provide proper care or custody). We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

The children were removed from respondent's care on March 6, 2024. On that day, the children were found unattended in the street without pants or shoes. The children had been left alone for several hours while respondent drove the children's father[2] to work. When respondent returned home, she was arrested for outstanding warrants and child neglect. Upon further investigation, the Department of Health and Human Services (DHHS) discovered that the home

---

[1] Respondent has another child, KKC, who was released into the care of his father. As of June 2026, respondent shared legal and physical custody of KKC. Respondent's parental rights to KKC are not at issue in this appeal.

[2] The children's father was also named as a respondent in this case. His parental rights to ZG, KC, NG, CC, and SC were terminated at the same time as respondent's, but he is not a party to this appeal.

-1-

was unsanitary and unsafe and that there was a lack of adequate food and care items. One child also disclosed physical abuse during a forensic interview. The trial court authorized an emergency pick-up order, and all the children were removed from respondent's care and placed in foster care.

Respondent waived probable-cause findings at the preliminary hearing the next day. At adjudication, respondent substantially admitted to the allegations in the petition. After several review hearings, the DHHS requested termination, alleging that there were statutory grounds to terminate respondent's parental rights under MCL 712A.19b(3)(c)(*i*) and (g).

In August 2025, the trial court conducted a termination hearing. Foster-care worker Cara Hall testified and provided updates on the children and the parents. Although respondent was granted unsupervised visits with CC, NG, and SC after she completed the Foster-Care Supportive Visitation program, respondent took longer than the typical 15 weeks to complete the program because providers thought that she was just "going through the motions" rather than benefiting from those services. Hall said that the children were very aggressive when they were together and that, "[o]ften times, the visitation specialist who watches the visits ha[d] to step in and correct the children" because respondent could not do so.

Hall recalled one incident in which ZG called respondent "careless" because respondent was not supervising KC and CC and had allowed them to touch and jump on a neighbor's car. In response, respondent said to ZG, "What the f**k you say? I'm not your grandma, I'll knock the f**k out of you." Hall also recalled that CC was self-harming by pulling out his hair, and "it was suggested by the agency, by his doctor, that he get a haircut." But it was only after the DHHS informed respondent that it planned to move for court approval of the haircut that respondent "allowed him to get his hair cut," which resolved CC's hair-pulling issue.

The trial court placed its oral opinion on the record in a subsequent hearing in September 2025. The court outlined the relevant testimony and noted that respondent's barriers were parenting skills, domestic relations, child characteristics, resource availability and management, social support, housing, and communication and interpersonal skills. The trial court found a statutory basis to terminate respondent's parental rights under MCL 712A.19b(c)(*i*) and (g). During its best-interest determination, the trial court said that respondent showed an "overall lack of benefit from" services and failed to apply any lessons from the services that she did complete. Accordingly, the trial court found that reasonable efforts had been made to reunify the family, that clear and convincing evidence established a statutory basis to terminate respondent's parental rights, and that termination was in the children's best interests. The court ordered that the children be placed into DHHS care and custody and that respondent's parental rights be terminated. Respondent now appeals.

## II. BEST INTERESTS

Respondent only challenges the trial court's best-interest determination, arguing that the trial court erred by finding that it was in the children's best interests to terminate her parental rights because she was making progress in rectifying barriers to reunification, participated in services, and obtained sufficient employment and housing. We disagree.

-2-

## A. STANDARD OF REVIEW

"We review for clear error the trial court's determination regarding the children's best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). Clear error exists when the reviewing court "is left with a definite and firm conviction that a mistake has been made." *In re Benavides*, 334 Mich App 162, 167; 964 NW2d 108 (2020) (quotation marks and citation omitted).

## B. ANALYSIS

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "Best interests are determined on the basis of the preponderance of the evidence." *In re LaFrance*, 306 Mich App 713, 733; 858 NW2d 143 (2014). The focus at the best-interest stage is "on the child rather than the parent." *In re Mota*, 334 Mich App 300, 321; 964 NW2d 881 (2020). The trial court should consider all the evidence when determining whether it is in the child's best interests to terminate parental rights, including "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re White*, 303 Mich App at 713 (quotation marks and citation omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *Id*. at 714.

In addressing best interests, the trial court found that the children were more bonded with their foster-care providers than with respondent. This finding was unsurprising given that the children "spent more time in foster care and away from their parents than they have with their parents." Even though the court acknowledged that the children appeared bonded to respondent, the court also acknowledged that respondent's actions showed that there was no "end in sight for these kids" if her rights were not terminated and the proceedings continued.

The trial court also considered respondent's parenting ability, noting that she never "really showed, through the course of the last 17 months, any ability whatsoever to understand what the children's needs are." Respondent failed to control and regulate the children for parenting visits and showed a "particularly troubling" response to learning that one child was self-harming by pulling out his hair. On one occasion, respondent failed to change SC's diaper for "at least eight hours," and on another occasion, respondent told ZG that she would "knock the f**k out of" him for saying that she was "careless" in her parenting of the other children. Of particular importance were the many incidents between respondent and the children that notably occurred after she began parenting classes and domestic-violence therapy. Consequently, the trial court surmised that respondent had not actually learned the skills that that she purported to have learned from those services.

The trial court considered relative placement but found that termination was still in the children's best interests. See *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015). The court considered the ages of the children and length of time that the children had spent in a placement, highlighting that respondent was not able to control the children during parenting

time; that ZG and KC had "been in foster care a huge chunk of their lives"; and that NG, SC, and CC had "been in foster care for over half their lives." See *id*. Additionally, the trial court considered case service plans, parent-agency treatment plans, and court-appointed special advocate reports. Ultimately, the trial court found that the children's need for permanency, stability, and finality outweighed respondent's minimal progress with her case service plans. See *In re White*, 303 Mich App at 713. To the extent that respondent argues that the trial court "relied too heavily on the testimony of the caseworker than the reports of Mother's service providers," the many reports were admitted without objection over the course of these proceedings, and this Court does not reweigh evidence. See *ARM v KJL*, 342 Mich App 283, 295; 995 NW2d 361 (2022).

The trial court also explicitly considered each child individually and found that the children "have so many needs now, all of them special, individual needs, based on their ages when they experienced all of this trauma, all of this abuse, all of this neglect." See *In re White*, 303 Mich App at 715. The court considered the children's "unique needs" and acknowledged that that each child had their own "individual manifestations" of their life circumstances. It noted how the children's different ages affected their bonds with respondent and their ability to communicate their placement preferences. The court also found that "the children are actually doing better in separate households," and that the foster-care providers were "willing to maintain a relationship with all of the siblings."

Respondent complains that her status as a domestic-violence victim was used to terminate her parental rights, but the record reflects otherwise. The fact that respondent was a victim of domestic violence may not be relied on as a basis for terminating parental rights. See *In re Plump*, 294 Mich App 270, 273; 817 NW2d 119 (2011). But termination may be "properly based on the fact that respondent's own behaviors were directly harming the children or exposing them to harm." *Id*. In this case, the trial court found that domestic violence was "a pervasive issue in the parents' relationship and this family system." In making its best-interest determination, the trial court emphasized that respondent "acknowledged her relationship with [the children's father] was unhealthy." She was referred for services but "had been lying to the provider about the contact and ongoing relationship she was having with" him. Respondent had been encouraged to seek a personal protection order, but she did not. The court noted that respondent had the ability to "take care of the children free of domestic violence" while their father was imprisoned, but she instead chose to get back together with him when he was released. Although the trial court mentioned domestic violence in its best-interest determination, the trial court properly limited its consideration of respondent's history with domestic violence to the manner in which respondent's own behaviors put the children at risk of harm. See *id*.

Similarly, respondent contends that the trial court should have allowed her more time to work on services, but neither the trial court nor respondent's children were required "to await the mere possibility of a radical change in respondent mother's life." *In re Williams*, 286 Mich App 253, 273; 779 NW2d 286 (2009). Despite her compliance with many of the services offered, the trial court found that respondent had failed to demonstrate any ability to understand the children's needs. Respondent "actively covered up" the nature of her relationship with the children's father during the first year that the children were in care. The trial court found "lots of examples during parenting time" in which respondent had "issues with her level of care and meeting the needs of the kids." Respondent had not demonstrated that she could resolve her barriers within a reasonable time.

-4-

Finally, respondent argues that the trial court erred by finding that termination was in the children's best interests before considering guardianship for the children. "Under appropriate conditions, a trial court may forgo termination and instead place a child in a guardianship." *In re Lombard*, 351 Mich App 523, 534; 35 NW3d 751 (2024), citing MCL 712.19A(8) and (9). However, "[a] trial court is not required to establish a guardianship in lieu of termination if it is not in the child's best interests to do so." *In re Lombard*, 351 Mich App at 534, citing MCL 712A.19a(9)(c). "Unlike termination of parental rights, the appointment of a guardian for a juvenile is not necessarily permanent." *In re TK*, 306 Mich App 698, 705; 859 NW2d 208 (2014). In this case, the trial court considered "whether guardianship [was] appropriate for the specific child[ren] at the heart of this case." *In re Lombard*, 351 Mich App at 537. The court found that respondent "failed to really attend virtually any of the medical or Wraparound services or the dental appointments for these kids." This was in direct contrast to the foster-care providers, whom the court stated "were there" and "were taking these matters seriously." Because the trial court found that the more permanent solution of terminating respondent's parental rights was in the children's best interests, it did not clearly err. See *id.* at 534, citing MCL 712A.19a(9)(c).

In sum, the children's need for permanence, stability, and consistency outweighed any other factors considered, see *In re Atchley*, 341 Mich App 332, 347-348, 990 NW2d 685 (2022), and a preponderance of the evidence supported the trial court's best-interest analysis, see *In re LaFrance*, 306 Mich App at 733. Therefore, the trial court did not clearly err by finding that termination was in the children's best interests. See *In re White*, 303 Mich App at 713.

Affirmed.


/s/ Mark T. Boonstra
/s/ Adrienne N. Young
/s/ Daniel S. Korobkin